*401 OPINION OF THE COURT
Fuchsberg, J.
In the circumstances of this case, we hold that the warrantless search of the defendant’s residential apartment by two fire marshals in the aftermath of a fire whose cause they were intent on discovering did not abuse the proscriptions of either the Fourth Amendment to the Federal Constitution or the comparable protection to be found in section 12 of article I of our State Constitution.
The question arises in the following context:
A jury has convicted defendant, James Calhoun, of arson in the third degree, reckless endangerment in the second degree and assault in the third degree. The charges all stem from an extensive early morning fire that heavily damaged a three-story building, the second floor of which he occupied as living quarters. Having initially been summoned to the scene of the conflagration shortly after 4:30 a.m., the New York City firemen who responded thought they had brought the fire under control by the time they departed the premises at 8:30 a.m. However, because the firefighters were unable to determine how the blaze had started, they immediately asked for the assistance of fire marshals, fire department personnel especially trained to the task of investigating fires of unknown origin. The need for this help was apparent before the original firemen left the scene.
As it happened, however, the marshals did not arrive until about four hours later. At that time, proceeding up what was left of the building’s common stairway, their attention, was arrested by significant burn marks at a point several steps below the second floor landing. The character of the marks strongly suggested that the fire, at least in part, had started at that point. The marshals further observed that the trail so etched had spread up to and over the second-story landing and through the entranceway of defendant’s then deserted apartment, the door to which had been burned away completely. Inspecting the apartment itself, the marshals came upon other areas evincing a pattern and intensity of charring which, in their expert judgment, were telltale traces of a liquid accelerant. Their investigation of the remainder of the structure, a path previously pursued by the firefighters, having eliminated other possible causes for the fire, photographs were then taken of the indicated points of origin.
*402 Denying defendant’s motion to suppress the evidence gleaned from the fire marshals’ inspection, the Trial Judge rejected the argument that it was the product of an unreasonable and warrantless search and seizure separate and apart from that made by the firefighters and directed, in effect, to the unearthing of evidence of the commission of arson. In essence, the court was of the view that Calhoun had no reasonable expectation of privacy in the burned premises and that, in any event, on the facts here, the fire marshals’ entry was part and parcel of the earlier and permissible warrantless response to the fire (90 Misc 2d 88). On this appeal from the order of the Appellate Division which, without opinion, affirmed the judgment of conviction, defendant relies in the main on a renewal of his contention that the proof emanating from the fire marshals should have been excluded. Though we agree with the result arrived at by the courts below, we do so on an analysis considerably at variance with that employed at nisi prius.
We start by reference to the established proposition that the safeguards afforded by the Fourth Amendment and our State Constitution extend beyond searches motivated by reasonable suspicion of criminal behavior (Camara v Municipal Ct., 387 US 523, 530; Matter of Finn’s Liq. Shop v State Liq. Auth., 24 NY2d 647, 655). Especially pertinent here is the breadth of this constitutional concern for an individual’s interest in privacy (People v Hodge, 44 NY2d 553, 557), which also encompasses arbitrary invasion by government officials who function in the areas of public health and safety (see See v City of Seattle, 387 US 541; Marshall v Barlow’s, Inc., 436 US 307).
 Nor is this treasured right forfeit simply because one’s home has been ravaged by fire. The classic statement that even a " 'ruined tenement’ ” may be secure against the sovereign (see Miller v United States, 357 US 301, 307) is literally applicable. For, people often continue to live and work in buildings that have sustained fire damage and, even when the ensuing destruction has made that impossible, remaining personal effects may very well invoke continued and respected expectations of privacy. To reinforce this protection, a warrantless intrusion by a government official is presumptively unreasonable, the burden of justifying it devolving upon the People (Vale v Louisiana, 399 US 30, 34; People v Hodge, supra, p 557).
*403 Without challenging these postulates, the People nevertheless correctly press the point that an exception to this stringent standard is to be found in entries effected to extinguish an ongoing conflagration. Such entries, though almost sui generis because of man’s long-recognized dread of unfriendly and uncontrolled fires and the urgent need to snuff out forces that may feed their ruinous course, fall within the embrace of the so-called emergency exception to the warrant requirement. This doctrine sanctions warrantless searches and seizures in circumstances presenting immediate danger to life or property (see People v Mitchell, 39 NY2d 173; People v Hodge, supra), or, on the same general principle, threat of destruction or removal of contraband or other evidence of criminality (see People v Vaccaro, 39 NY2d 468; People v Farenga, 42 NY2d 1092; see, generally, Mascolo, Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment, 22 Buffalo L Rev 419, 426; Note, 43 Fordham L Rev 571, 581-584).
 The obvious rationale for these departures is to be found in the pressures posed by fire or other exigencies which do not allow for the delay that the securing of a warrant would entail. Needless to say, recognition of the reality of such situations does not signal weakening of our constitutional resolve. Rather, it simply refuses to ignore the existence of reflexive reactions, and the fact that, in certain circumstances, even a considered decision may compel alacrity of response. So the law does not deny leeway to official action undertaken in an exigency. Nor does it subject public officials to a standard which, made stricter by hindsight, would uniformly preclude them from all courses of conduct but the least intrusive. Instead, it requires only that public officials act reasonably in light of the particular exigent circumstances— "reasonableness” being measured against the general constitutional injunction proscribing warrantless searches.
All this said, as defendant concedes, it would take well-nigh unforeseeable circumstances to raise any dispute over a fireman’s incursion to eradicate an existing fire (see, e.g., Steigler v Anderson, 496 F2d 793). The more difficult question, and the one to be faced in this case, is whether it was permissible for the subsequent search, made by the fire marshals at a time after the fire had died out, to have been essayed without a warrant. In this connection, it appears well accepted, given the insidious nature of an unwanted fire, that *404 it is not to be cavalierly assumed that the immediate invasion of property to attack the flames of a raging fire is to be regarded as entirely separable from the sometimes more subtle follow-up whose goal is the investigation of its source. Moreover, that a fireman is capable of killing the flames until the last glow is gone does not certify to his competence to decide whether there still lurks a hidden danger — perchance a gas leak, maybe some electrical malfunction, perhaps any one of a host of sources of spontaneous or other combustion — that could quickly reignite the premises (see United States v Green, 474 F2d 1385, 1388). It cannot be gainsaid that an expert, be it one denominated fire marshal or otherwise, who within a reasonable time undertakes an examination in large part to ensure that the danger posed by a property-destructive or life-threatening fire is gone for good may be found to be performing an urgent fire-responsive function.
 Moreover, even in the absence of a potential for reignition, because the products of combustion and other evidence of a fire’s cause so often will be fragile and likely to disappear — whether through exposure to the elements, shifts in a building’s already crumbled structure, or intentional or inadvertent human contact — fire marshals may permissibly undertake postfire entries in order to gather and preserve vital data for fire prevention while it is still available.[1] No doubt it is with such considerations in mind that the Supreme Court has made clear that "officials” need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished (Michigan v Tyler, 436 US 499, 510).
Of course, in examining the record to determine whether there was support for findings that the arrival of the marshals to make their investigation was within a "reasonable time” after the fire had stopped burning, whether the marshals were fairly to be regarded as a wholly separate entity rather than but another arm of the agency which had put out the fire, and whether the marshals’ invasion of defendant’s privacy was motivated primarily by an intent to gather evidence of the *405 commission of a crime so as to subject it to traditional warrant safeguards (La Fave, Search and Seizure: A Treatise on the Fourth Amendment, § 10.40), at this juncture we are confronted with affirmed findings of fact which we may not disturb unless, after giving the People the benefit of every favorable intendment, the determinations were erroneous as a matter of law.
Taking these issues in inverse order, we turn first to the motive for the search. While fire marshals in New York City do not respond to every fire as a matter of routine, there was proof that their task was to investigate all fires of undetermined origin rather than to conduct a search for evidence of arson. In this case, they were not told in advance that there was evidence of arson. In fact, when they arrived, they did not know the cause or where and what to look for. It was not until hours later that defendant’s earlier threats to the landlord were brought to their attention. While arson, conceivably, was a possible cause for the fire, a spectrum of other imaginable causes, both natural and accidental, remained theories to be tested by the marshals.[2] Thus, had there been a finding that the visit to the premises was motivated instead primarily by an intent to gather support for an arson prosecution, the warrantless intrusion might well have exceeded the bounds of the emergency exception and trespassed on the constitutional guarantee (see People v Mitchell, supra, p 177; Michigan v Tyler, 436 US 499, 504, n 4, supra; People v Dajnowicz, 43 Mich App 465, 474-475). For, the invasion of privacy might then be transformed from one limited in scope to one which, because it was accusatory in nature, would have to yield to traditional warrant safeguards (La Fave, Search and Seizure: A Treatise on the Fourth Amendment, § 10.40). Suffice it to *406 say, however, that nothing in the record here compelled a conclusion that the fire marshals undertook their examination as a pretext for a criminal search.
There is also a sufficient basis for the trial court’s finding that the marshals’ phase of the work, broadly viewed, was but another, though specialized, part of the over-all job of meeting the challenge of fire and that it was employed within a reasonable time after the fire appeared to have died out. Michigan v Tyler (supra) is especially revealing in that regard. The court there upheld a warrantless search conducted by marshals, as here, about four hours after the firefighters had done their part. True it is that there the delay was explained by the fact that earlier inspection by the marshals had been impeded by smoke and steam that still hovered over the premises after the firefighters had completed their appointed task. But, postfire persistence of such conditions is too common for a determination of reasonableness to have to depend on whether marshals choose to arrive as soon as a fire has been quelled and then wait, or fix their arrival for a time when the obscuring elements would have dissipated. In any event, it is revealing that the court did not require that the marshals have used the delaying hours to obtain a warrant.[3]
Nor need it be critical that the marshals’ arrival occurs before the firefighters depart rather than after some reasonable lapse of time. The charade of such a formality does not control. Notably, in the instant case, the marshals were apparently called from the scene of a prior investigation. And the record reveals not the slightest indication of any willful delay (cf. People v Vaccaro, 39 NY2d 468, 473, supra). In short, the extent of the time lapse that occurred in this case and the circumstances that contributed to it were but factors to be considered in assessing the reasonableness of the marshals’ entry.
Accordingly, after matching the evidence against the affirmed findings taken as a whole, we cannot say that the conclusion that the search was reasonable was without sup *407 port. It follows that the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed.

. The practical need for frequent follow-up by marshals in the urban area in which this fire took place is made especially clear by the fact that, in the last two years alone, nearly a quarter of a million fires occurred in New York City. In 1975, the year in which the fire in the present case occurred, the current average was exceeded, the number reaching 137,237. (Annual Statistics Reports of the Fire Department of the City of New York.)

. The marshals were acting under the authority of section 488(2)-1.0 of the Administrative Code of the City of New York, which provides:
"Purposes of investigations — The commissioner, the chief and deputy chief fire marshals, the assistant fire marshals, and such other employees of the department designated by the commissioner, shall investigate, examine and inquire into the following matters:
"1. The origin, detail and management of fires in the city, particularly of supposed cases of arson, incendiarism, or fires due to criminal carelessness.”
The ordinance, of course, must be Construed, if possible, so as not to contravene constitutional requirements. In that connection, we note that, though the obligation to investigate fires specifically includes those whose origins appear to be criminal in nature, the broad sweep of its general authorization, reasonably read, certainly would include cases in which the yet undiagnosed cause of a fire merely presents such a possibility.

. Because the marshals’ participation within the "reasonable time” compass here is linked with the firefighting itself, we are not concerned with the interesting questions involving administrative warrants and their application to fire inspections which are not incidental to a recent fire (see Camara v Municipal Ct, 387 US 523, supra; See v City of Seattle, supra; see, generally, Comment, 14 Land & Water L Rev 207; Michigan v Tyler: The Arson Investigation — Its Dual Nature and Fourth Amendment Search Requirements, 1979 Detroit Coll L Rev 329, 336).