(No. 53416.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. FRED HOLLOWAY *et al.,* Appellees.

*Opinion filed June 4, 1981.—Rehearing denied*
*October 19, 1981.*

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Edmond S. Rees, State's Attorney, of Carlinville (Kenneth R. Boyle and Keith P. Vanden Dooren, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, of the Office of the State Appellate Defender, of Springfield (Karen Munoz, Assistant Defender, of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendants, Fred Holloway and Steve Moore, in the circuit court of Macoupin County, were charged by indictment with three counts of arson, in violation of section 20—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 20—1). Defendant Moore was also charged by indictment with one count of criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1). In addition, each of the defendants was charged by information with two counts of conspiracy to commit arson (Ill. Rev. Stat. 1977, ch. 38, par. 8—2). All of these charges

arose out of an early-morning fire on February 2, 1977, that destroyed a two-story residence owned jointly by defendant Holloway and his wife, located in Virden. Prior to trial, defendant Holloway filed a written motion pursuant to section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12) to suppress evidence illegally seized. The basis for the motion was that after the blaze had been extinguished and the firemen had left the scene, a fire investigator, acting in his official capacity, made several entries into the premises in order to determine the cause of the fire. During these entries, which were made without permission or a warrant, the evidence sought to be suppressed was seized. Defendant Moore, who had no property or possessory interest in the premises, orally joined in this motion, which was granted by the trial court. On appeal by the State, pursuant to our Rule 604(a) (73 Ill. 2d R. 604(a)), the appellate court, with one justice dissenting, affirmed the order suppressing the evidence based upon its interpretation of *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942. The court also held that the State waived its right to challenge defendant Moore's standing to join in the motion by having failed to raise the issue at the hearing. (82 Ill. App. 3d 703.) We granted leave to appeal pursuant to Rule 315(a) (73 Ill. 2d R. 315(a)).

For the reasons expressed in this opinion, we find the motion to suppress was properly granted and that the State has waived its right to challenge defendant Moore's standing.

Fire broke out in the unoccupied Virden premises at about 2 a.m. on February 2, 1977. Officer Gary Plessa, a member of both the Virden police department and the volunteer fire department, received the call. After notifying the police dispatcher, who in turn notified the Virden volunteer fire department, Officer Plessa went to

the scene, by which time the fire had completely engulfed the premises. Officer Plessa went to a nearby apartment complex to awaken residents and warn them of the impending danger. Defendant Moore was found in one of the apartments.

The blaze was described as a "major fire" requiring the services of 40 to 45 firemen with equipment from Virden and the nearby town of Girard. During the course of fighting the fire, a gasoline can was found lying in the snow some 50 feet away from the burning structure, but nothing else unusual or suspicious was found while the fire was being fought. The fire was extinguished by about 7 a.m., at which time the firemen and the equipment left the scene.

At about 7:30 a.m. the Virden fire chief contacted James R. Scott, a fire investigator who lived in the town of Benld, 30 miles from Virden. Scott was informed that his presence was required to investigate a "suspicious" fire, but it was not indicated that this "request was in any way of an emergency nature" which required his immediate presence. Scott arrived in Virden some two hours later, at approximately 9:30 a.m., but instead of going directly to the burned premises, went to the police station. Inspector Scott next went to the fire scene, where he examined the exterior of the structure and the gasoline can. Scott first entered the premises at about 9:45 a.m. and stayed until about 1 p.m. He went to the police station to get a photographer to take some pictures. He reentered the premises sometime that afternoon accompanied by a local photographer and caused pictures to be taken. Scott ceased his investigation that day at about 4:30 p.m. Testimony was produced at the hearing on the motion to suppress that the fire had rekindled twice during the period of Scott's investigation but the nature and extent of these "rekindlings" were never clearly established. In any event, the "rekindlings" were not sufficient to hamper

Scott's investigation in any way, nor were they considered to be unusual. Scott did not accompany the fire fighters when they returned to the premises to extinguish the rekindled fires, and his presence and his investigation were not related to the rekindling of the fires.

On the following day, February 3, 1977, Scott returned to the scene with defendant Holloway, who explained that certain flammable liquids had been stored in the burned premises. Scott was satisfied that the places of storage were compatible with the type of fire pattern he had observed inside the building on the previous day and that he did not have an arson case. The investigation was closed until the autumn of 1978, when a witness implicated the defendants in the occurrence.

In *People v. Tyler* (1977), 399 Mich. 564, 250 N.W.2d 467, fire had broken out shortly before midnight on January 21, 1970, in a furniture store leased to defendant Tyler. Around 2 a.m. the fire was out but still smoldering when Chief See, who was responsible for determining the cause of the blaze, appeared on the scene. Lieutenant Lawson, present during the actual fire, informed See that two containers of flammable liquid had been found inside the building. The two men then entered the gutted premises without obtaining permission or a warrant and examined the containers. Based upon See's observations during this entry, a police detective was called and several reentries were made and evidence seized throughout the morning. On February 16, 26 days later, several other warrantless entries were made and additional evidence seized pursuant to an arson investigation. The Michigan Supreme Court held that all of the evidence obtained from the premises had to be suppressed since the exigent circumstances created by the fire had abated when the blaze was extinguished, making the initial entry by See illegal.

On *certiorari* (*Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942) the Supreme

Court rejected as "unrealistically narrow" the dousing-of-the-last-flame rule as the test for determining when the exigent circumstances permitting warrantless entry into fire-damaged premises abate. The court observed that the owner of fire-damaged premises retains a privacy interest in the property. Therefore, entries into the premises by fire investigators, even for the purpose of ascertaining the cause of a fire, must be made pursuant to the warrant requirements of the fourth amendment.

> "Thus, there is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime, or because the fire might have been started deliberately. Searches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment." (*Michigan v. Tyler* (1978), 436 U.S. 499, 506, 56 L. Ed. 2d 486, 496, 98 S. Ct. 1942, 1948.)

However, the court noted that the warrant requirement is suspended by exigent circumstances created by the fire itself.

> "A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.' Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze." (*Michigan v. Tyler* (1978), 436 U.S. 499, 509, 56 L. Ed. 2d 486, 498, 98 S. Ct. 1942, 1950.)

Thus the court held that the exigent circumstances created by a fire do not end with the dousing of the last flame because prompt determination of the origin of the blaze

is part and parcel of the total fire-fighting function. *Michigan v. Tyler* (1978), 436 U.S. 499, 510, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1950.

The court in *Tyler* was of the opinion that the investigation, which was begun as the fire was being extinguished and was discontinued because of smoke, steam, and darkness, could be continued later without a warrant.

> "On the facts of this case, we do not believe that a warrant was necessary for the early morning re-entries on January 22. As the fire was being extinguished, Chief See and his assistants began their investigation, but visibility was severely hindered by darkness, steam, and smoke. Thus they departed at 4 a.m. and returned shortly after daylight to continue their investigation. Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. Under these circumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." (*Michigan v. Tyler* (1978), 436 U.S. 499, 511, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1950-51.)

The entries occurring on February 16, however, being clearly detached from the circumstances that allowed the initial warrantless entry, were illegal, and any evidence obtained during those reentries was entitled to be suppressed.

In the final paragraph of the opinion, the Supreme Court stated:

> "In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze.

Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches." (*Michigan v. Tyler* (1978), 436 U.S. 499, 511, 56 L. Ed. 2d 486, 500, 98 S. Ct. 1942, 1951.)

We believe the gravamen of *Tyler* to be that since the function of fire fighting is broader than merely dousing the flames, officials may remain on the premises to continue, or enter to begin, a prompt investigation into the cause of a fire without first obtaining a warrant. Due to the need for prompt determination of the cause of a fire, the focus in determining whether a warrantless entry made after a fire had been extinguished was reasonable will be upon whether the entry was in furtherance of an investigation, promptly begun, in response to exigent circumstances created by or discovered during the fire itself. However, once the fire is out *and* the exigency has abated, warrantless entry by fire officials will not be permitted.

Generally, fire fighters and investigators will not run afoul of the Constitution by conducting prompt fire-scene investigations. The privilege of commencing an investigation and then leaving the scene and later returning without a warrant is not extended simply because of the fact that a structure has burned. Rather, when the circumstances indicate that prompt action is required to meet the exigencies of the event, viewed as a whole, then officials may investigate within a reasonable time after the flames have been extinguished. We must keep in mind that if an owner's reasonable expectations of privacy in fire-damaged property are to be given fourth amendment protection, the privilege to begin an investigation into the cause of a fire without a warrant may not survive a departure and return to the scene absent an emergency situation. This interpretation of *Tyler* is consistent with the result reached in post-*Tyler* decisions in other jurisdictions. (*Schultz v.*

*State* (Alaska 1979), 593 P.2d 640; *Cleaver v. Superior Court* (1979), 24 Cal. 3d 297, 594 P.2d 984, 155 Cal. Rptr. 559; *State v. Olsen* (Minn. 1979), 282 N.W.2d 528.) In each of these cases the evidence clearly established, and the courts held, that exigent circumstances existed at the time the investigations were begun, thereby justifying the warrantless entries.

In *Tyler,* as noted earlier, the investigation was actually begun while the fire was being fought when fire fighters discovered suspicious containers containing flammable liquids inside the premises. In the case at bar, fire fighters did not discover or observe anything unusual about the premises as the blaze was being fought. The gasoline can had been found outside the burned premises. Although firemen may not possess the expertise necessary to conduct detailed investigations, they are fully competent to begin an inquiry in response to conditions which may present a latent danger even after the flames have been extinguished. Here, unlike *Tyler,* no investigation was begun by firemen or officials on the scene. Moreover, no search for victims or entry was made to check for gas leaks or continuing electrical malfunctions, all of which would have been clearly permissible under the rationale of *Tyler.* As the Supreme Court in *Tyler* observed:

"The circumstances of particular fires and the role of firemen and investigating officials will vary widely. A fire in a single-family dwelling that clearly is extinguished at some identifiable time presents fewer complexities than those likely to attend a fire that spreads through a large apartment complex or that engulfs numerous buildings. In the latter situations, it may be necessary for officials—pursuing their duty both to extinguish the fire and to ascertain its origin—to remain on the scene for an extended period of time repeatedly entering or re-entering the building or

buildings, or portions thereof. In determining what constitutes a 'reasonable time to investigate,' appropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy." (*Michigan v. Tyler* (1978), 436 U.S. 499, 510 n.6, 56 L. Ed. 2d 486, 499 n.6, 98 S. Ct. 1942, 1950 n.6.)

In our case the fire chief and his men simply extinguished the blaze and left the scene, apparently satisfied that no danger to the public lurked in the smoldering remains, and that no exigent circumstances required an immediate investigation. Under these facts, the conclusion is permissible that the State's interest in promptly determining the cause of the fire must yield to the individual's reasonable expectations of privacy in the burned premises. See generally, 3 W. LaFave, Search and Seizure secs. 10.4(a), 10.4(b), at 260-65 (1978).

In *People v. Calhoun* (1980), 49 N.Y.2d 398, 402 N.E.2d 1145, 426 N.Y.S.2d 243, the New York Court of Appeals upheld the denial of a motion to suppress evidence seized, by officials not originally on the scene, during a fire investigation promptly begun after the blaze was extinguished, where nothing unusual was noted during the blaze. The court was careful to point out, however, that the officials were "not told in advance that there was evidence of arson," and were merely making a routine investigation into the cause of the fire. (49 N.Y.2d 398, 405, 402 N.E.2d 1145, 1149, 426 N.Y.S.2d 243, 247.) The court went on to observe that had their purpose been to gather evidence of arson, their conduct might well have exceeded the bounds of the emergency exception to the fourth amendment. 49 N.Y.2d 398, 405, 402 N.E.2d 1145, 1149, 426 N.Y.S.2d 243, 247.

Here, unlike *Calhoun,* Investigator Scott was told in advance that arson was suspected. The conduct of offi-

cials at the fire scene and the indication to Scott that no emergency requiring his immediate presence then existed makes the conclusion inescapable that Scott's *primary* purpose was to search for evidence of a crime. Scott was not an official called in to make a routine search for victims or latent dangers in the smoldering debris, as was the case in *Calhoun.* As noted earlier, such an entry, promptly made by *any* official, would probably be permissible as a response to the exigent circumstance of the fire itself. Rather, Scott's entry was a response to a suspicion harbored by the Virden fire chief that the blaze was of criminal origin. As such, his entry would be permissible only if an emergency continued to exist or his arrival could be considered a continuation of an investigation already begun by officials on the scene.

At the time the Virden fire department departed, no investigation had been started, none was in progress, and nothing had been discovered inside the premises during the course of fighting the fire which would justify the prompt, but nonetheless warrantless, intrusion by Investigator Scott. The gasoline can was discovered by firemen some 50 feet from the building, with no indication then apparent that it was in any way related to the blaze. Further, while the fact that the fire "rekindled" belies the conclusion that the fire was out, the record does not establish, as a matter of law, that the emergency presented by the initial blaze was not over. In any event, Scott's entry upon the premises and his investigation were not in response to these subsequent fires, and the fact that they occurred cannot be viewed as a retroactive justification for the initial warrantless entry.

In the case at bar, the trial court considered the motion to suppress in light of the holdings in the *Tyler* decision. The trial court specifically found "that no emergency or exigent circumstance was presented to this court" which would excuse the investigator from securing

permission to go upon the premises or from securing a warrant. This finding, when considered with the holding in *Tyler,* led the court to conclude that Scott's investigation was detached from the initial emergency created by the fire and was made in violation of the defendant's fourth amendment rights. We will not disturb the trial court's ruling on a motion to suppress unless it is manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 246, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506; *People v. Clay* (1973), 55 Ill. 2d 501, 505; *People v. Brooks* (1972), 51 Ill. 2d 156, 165.) We cannot say from the evidence presented to the trial court that its conclusion that no emergency or exigent circumstances existed that would justify Scott's warrantless entry upon the premises was manifestly erroneous.

We turn next to the question of whether the State has waived its right to challenge the standing of defendant Moore. The State made no objection when counsel for defendant Moore orally joined in defendant Holloway's motion to suppress. Also, the State filed a motion to reconsider the court's ruling on the motion to suppress. Again, neither in the motion nor on its oral argument did the State raise the question of Moore's standing. Issues not raised in the trial court are generally considered waived on appeal. (*People v. Knight* (1979), 75 Ill. 2d 291, 300.) The principle of waiver applies to the State as well as the defendant in a criminal case. (*People v. McAdrian* (1972), 52 Ill. 2d 250, 254.) Had the State made a timely objection, defendant Moore may have been able to satisfy the court that he did, in fact, possess an interest in the premises sufficient to give him standing to object to the warrantless entry. As noted in *McAdrian,* one of the basic considerations supporting the rule preventing a party from raising issues for the first time on appeal is that "[t]he failure to urge a particular theory before the trial court will often cause the opposing party to refrain

from presenting available pertinent rebuttal evidence" which could have a bearing on the disposition of the question. (*People v. McAdrian* (1972), 52 Ill. 2d 250, 254. See also *People v. McCullum* (1977), 66 Ill. 2d 306, 316.) Consequently, we hold that the State has waived its right to challenge the standing of defendant Moore.

For the reasons heretofore expressed in this opinion, the judgment of the appellate court is affirmed.

*Judgment affirmed.*