No. 2—09—1325
Opinion filed February 24, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08—CF—313 |
| ABE HAYWOOD, | ) ) | Honorable Michael P. Bald, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

A police officer saw defendant, Abe Haywood, driving his car with the right turn signal activated. Defendant drove past three opportunities to turn, and the officer stopped him based on the belief that defendant's use of the turn signal was a traffic violation. Defendant admitted to the officer that his driving privileges had been suspended. Defendant was arrested, a search allegedly disclosed heroin on his person, and he was charged with unlawful possession of a controlled substance. See 720 ILCS 570/402(c) (West 2008).

Defendant moved to quash the arrest and suppress the evidence, arguing that he had not violated any traffic law and, therefore, the stop was not justified. The trial court granted the motion,

and the State appeals. The State argues that "the traffic stop had been objectively justified by reasonable suspicion that defendant's conduct violated traffic law." We affirm.

FACTS

On February 5, 2009, defendant was charged with unlawful possession of a controlled substance in that he knowingly possessed less than one gram of a substance containing heroin. 720 ILCS 570/402(c) (West 2008). On April 16, 2009, defendant moved to quash the arrest and suppress the evidence, asserting that he was not violating any law at the time of the traffic stop and, therefore, the stop was unauthorized at its inception.

The parties stipulated to the following facts. On August 27, 2008, Deputy Lillge was driving east on Route 20 in Stephenson County when he observed defendant driving west in a 1998 Chrysler. The vehicle caught the officer's attention because the right turn signal was flashing as the car drove past a driveway. The officer turned his squad car around and began following defendant. With the turn signal still activated, defendant drove past two other opportunities to turn: a driveway and a road to the right.

The officer activated his emergency lights, and defendant slowly pulled to the shoulder and stopped. After notifying dispatch of the stop, the officer walked to defendant's driver's-side door. The officer asked defendant for his driver's license, and defendant responded, "I'm not going to lie to you, I don't have a license because it would be suspended." Defendant handed the officer a state-issued identification card. When asked why he was driving without a license, defendant said he had to get to Freeport to get a tattoo.

The officer verified the suspension of driving privileges and returned to the Chrysler to ask defendant if he knew why he had been stopped. Defendant replied, "probably my blinker," and explained that he was aware that it had been blinking but he had ignored it. The officer handcuffed

defendant and told him that he was under arrest for driving with a suspended license. The officer issued two traffic citations: one for driving with a suspended license (see 625 ILCS 5/6—303 (West 2008)) and one for improper use of a turn signal (see 625 ILCS 5/11—804(d) (West 2008)). A search incident to the arrest disclosed evidence that led to the charged offense.

On November 10, 2009, the trial court entered a written order quashing the arrest and suppressing the evidence. The court recited the stipulated evidence that defendant's turn signal had remained activated as he drove past "various opportunities" to turn right. The court found *United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006), to be "on all fours" with the facts of this case in that section 11—804(d) was invoked incorrectly to justify a traffic stop. Specifically, the court noted that an officer's mistaken belief that a statute has been violated does not authorize or justify a traffic stop or any subsequent actions. In other words, the court concluded, the State could not claim a good-faith exception to justify the stop.

The trial court found the State's reliance on *People v. Sorrells*, 209 Ill. App. 3d 1064 (1991), to be misplaced. The court noted that *Sorrells* "essentially stands for the idea that there can be other justification for stopping a vehicle than what is given at the time of the issuing of a ticket." See *Sorrells*, 209 Ill. App. 3d at 1069 ("An officer may always warn of a traffic violation or reprimand the driver without citing him, and the officer need not charge a minor violation when, after a stop, a more serious violation is discovered."). The court concluded that *Sorrells* did not authorize the stop because, at the time of the stop, defendant had no outstanding warrants and his inadvertent activation of the turn signal, rather than another traffic violation, was the reason for the stop.

On December 4, 2009, the trial court denied the State's motion to reconsider. On December 18, 2009, the State timely filed a notice of appeal and a certificate of impairment.

ANALYSIS

The burden of proof is on the defendant at a hearing on a motion to suppress evidence. 725 ILCS 5/114—12(b) (West 2008); *People v. Lampitok*, 207 Ill. 2d 231, 239 (2003). If the defendant makes a *prima facie* case that the evidence was obtained through an illegal search, the State can counter with its own evidence. *Lampitok*, 207 Ill. 2d at 239.

When reviewing a trial court's suppression ruling, this court applies a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)); *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). The trial court's factual findings are entitled to great deference, and we will reverse them only if they are against the manifest weight of the evidence. *Cosby*, 231 Ill. 2d at 271. However, a reviewing court " 'remains free to undertake its own assessment of the facts in relation to the issues,' " and we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Cosby*, 231 Ill. 2d at 271 (quoting *Luedemann*, 222 Ill. 2d at 542-43). Because the facts are not disputed and the trial court did not make any credibility assessments, our review of the suppression order in this case is *de novo*. See *People v. Mitchell*, 355 Ill. App. 3d 1030, 1032 (2005).

A vehicle stop constitutes a "seizure" of "persons" within the meaning of the fourth amendment. *People v. Close*, 238 Ill. 2d 497, 504 (2010) (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)). Accordingly, vehicle stops are subject to the fourth amendment's reasonableness requirement (*Whren v. United States*, 517 U.S. 806, 810 (1996)), which we analyze under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Close*, 238 Ill. 2d at 505. *Terry* permits a police officer to conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to commit, a crime. *Close*, 238 Ill. 2d at 505 (citing *Terry*, 392 U.S. at 22).

An investigatory stop must be justified at its inception. *Close*, 238 Ill. 2d at 505 (citing *Terry*, 392 U.S. at 19-20). " '[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Close*, 238 Ill. 2d at 505 (quoting *Terry*, 392 U.S. at 21). The officer's suspicion must amount to more than an inarticulate hunch, but need not rise to the level of suspicion required for probable cause. *Close*, 238 Ill. 2d at 505. "In judging the police officer's conduct, we apply an objective standard: 'would the facts available to the officer at the moment of the seizure *** "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Close*, 238 Ill. 2d at 505 (quoting *Terry*, 392 U.S. at 21-22).

The State argues that the traffic stop was justified at its inception because defendant violated the Vehicle Code (625 ILCS 5/11—804(d)) in that he activated his right turn signal and drove past three opportunities to turn right. Several principles of statutory interpretation are relevant to this case. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Donoho*, 204 Ill. 2d 159, 171 (2003). The best evidence of legislative intent is the statutory language. When possible, a court should interpret the statute according to the plain and ordinary meaning of the language. *Donoho*, 204 Ill. 2d at 171. In determining legislative intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. *Donoho*, 204 Ill. 2d at 171-72. A statute is ambiguous if it is subject to two or more reasonable interpretations. *Donoho*, 204 Ill. 2d at 172. When the statute contains undefined terms, we may employ a dictionary to ascertain the plain and ordinary meaning of those terms. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). Where the language is clear and unambiguous, we will apply the statute without resort to further aids of statutory

construction. The construction of a statute is a question of law, which is reviewed *de novo*. *Davison*, 233 Ill. 2d at 40.

### A. Rules of the Road

The State argues that "the traffic stop had been objectively justified by reasonable suspicion that defendant's conduct violated traffic law, particularly if the Illinois Vehicle Code were properly interpreted." The traffic citation stated that defendant had violated section 11—804(d), which provides that an electric turn signal device "must be used to indicate an intention to turn, change lanes or start from a parallel parked position but must not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or 'do pass' signal to operators of other vehicles approaching from the rear. However, such signal devices may be flashed simultaneously on both sides of a motor vehicle to indicate the presence of a vehicular traffic hazard requiring unusual care in approaching, overtaking and passing." 625 ILCS 5/11—804(d) (West 2008).

In its reply brief, the State cites section 11—804(d) in arguing that the stop was justified based on a suspected violation of "actually emitting flashing light when not indicating an intention to turn, change lanes, or start from a parallel parked position." We disagree.

Section 11—804(d) requires, prohibits, or permits the use of a turn signal, depending on the circumstances. First, a turn signal *must* be used to indicate an intention to turn, change lanes, or start from a parallel-parked position. Second, a turn signal *must not* be used on one side of a parked or disabled vehicle or be used as a "do pass" signal to drivers approaching from the rear. Third, a turn signal *may* be used on both sides of a vehicle to indicate a traffic hazard. 625 ILCS 5/11—804(d) (West 2008).

While section 11—804(d) *requires* that a turn signal be used to indicate an intention to turn, change lanes, or start from a parallel-parked position, the plain and ordinary meaning of the statute

does not *prohibit* a driver from activating one turn signal without intending to change direction—as long as the vehicle is not parked or disabled or the driver is not using his turn signal as a "do pass" signal. There is no evidence in the record that defendant was using his turn signal on one side of a parked or disabled vehicle or as a "do pass" signal, which are the only types of conduct prohibited by section 11—804(d). Driving past opportunities to turn while a turn signal is activated is not among the turn-signal uses barred by section 11—804(d). If the legislature had intended defendant's conduct to be a traffic violation, it would have mentioned that conduct in section 11—804(d).

The State argues that defendant's conduct undermines the goal of safety and efficiency on the roads because it distracts and confuses other motorists. However, rather than specifying a *maximum* distance a driver may travel with a turn signal activated, section 11—804 actually mandates a *minimum* distance that a driver must travel with an activated signal before he may turn. In particular, section 11—804(b) provides that "[a] signal of intention to turn right or left when required must be given continuously during not less than the last 100 feet traveled by the vehicle before turning within a business or residence district, and such signal must be given continuously during not less than the last 200 feet traveled by the vehicle before turning outside a business or residence district." 625 ILCS 5/11—804(b) (West 2008).

Nothing in the record indicates whether defendant activated his signal in a business or residence district or how far he had traveled before Deputy Lillge effected the stop. Regardless, it is possible that the minimum distance requirement of section 11—804(b) actually *prohibited* defendant from turning off Route 20 because he had not yet traveled far enough with his turn signal activated. It is easy to imagine a motorist encountering more than one opportunity to turn within a short distance. The minimum distance requirement of section 11—804(d) might require that the motorist activate his turn signal and drive past the other opportunities before turning. If we were to

adopt the State's position, a motorist in that situation would commit a traffic violation regardless of when he activated his turn signal. If the motorist activates his turn signal and drives past an opportunity to turn, as defendant did, he would violate section 11—804(d) by distracting and confusing other drivers. However, if the motorist drives past an opportunity to turn and then activates his turn signal and turns abruptly, he would violate the minimum distance requirement of section 11—804(b). We decline to interpret section 11—804 in a way that creates such a conflict.

Moreover, we reject the notion that, because defendant admitted to the officer that he had left his "blinker" on without intending to turn, defendant's conduct amounted to a traffic violation. The record contains no evidence that Deputy Lillge had any reason to suspect such lack of intent before the traffic stop, and evidence obtained during the stop may not be relied upon to show that it was justified at its inception. Also, the State employs faulty logic in arguing that a driver violates section 11—804(d) if he activates his turn signal without an intent to turn. Generally, section 11—804(d) stands for the proposition that, when a driver intends to change directions, he must alert other drivers of that intention by using a turn signal. The plain and ordinary meaning of the statute does not make it a traffic violation for a motorist to activate his turn signal without the intent to actually turn.

To conclude that defendant violated section 11—804 would require us to read into the statute exceptions, limitations, or conditions that depart from its plain and ordinary meaning. See *People v. McClure*, 218 Ill. 2d 375, 383 (2006). We hold that, as long as a motorist does not use a turn signal on one side of a parked or disabled vehicle or as a "do pass" signal to drivers approaching from the rear, nothing in the plain and ordinary meaning of section 11—804 prohibits a driver from activating one turn signal and driving past three opportunities to turn. We conclude that section 11—804 does not provide a basis for justifying defendant's traffic stop at its inception.

The State argues that the Vehicle Code is ambiguous and, therefore, the traffic stop was objectively reasonable because Deputy Lillge had a good-faith mistaken belief that defendant was committing a traffic violation. However, we agree with the trial court that *McDonald*, which was decided by the Seventh Circuit Court of Appeals, is persuasive authority in favor of quashing the arrest and suppressing the evidence. Although Illinois state courts are not bound to follow federal court decisions, such decisions can provide guidance and serve as persuasive authority. *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 360 (2005).

The facts of *McDonald* are nearly identical to this case. McDonald was charged with possession of a firearm by a felon after the police stopped him for using his turn signal while rounding a bend in a street. *McDonald*, 453 F.3d at 959. The arresting officer believed that McDonald's use of his turn signal was a violation of section 11—804(d). McDonald responded that section 11—804(d) did not prohibit his actions and that the officer's mistake of law could not justify the stop. *McDonald*, 453 F.3d at 959. The district court denied McDonald's motion to quash the arrest and suppress the firearm, and the Seventh Circuit reversed, concluding that the traffic stop was not justified. The Seventh Circuit held that (1) McDonald's use of his turn signal did not violate Illinois law and (2) the police officer's mistaken belief about the law did not support probable cause to arrest McDonald. *McDonald*, 453 F.3d at 959.

Just as in this case, the State argued that the stop was supported by probable cause because the officer believed that McDonald violated section 11—804(d) of the Vehicle Code when he activated his turn signal but did not turn. *McDonald*, 453 F.3d at 960. The Seventh Circuit disagreed, noting that section 11—804(d) requires use of a turn signal to indicate an intention to turn, change lanes, or start from a parallel-parked position; prohibits use of a turn signal on one side only on a parked or disabled vehicle; and prohibits use of a turn signal as a courtesy or "do pass" signal

to operators of vehicles approaching from the rear. *McDonald*, 453 F.3d at 960; see 625 ILCS 5/11—804(d) (West 2008). The court held that "[t]he statute does not state, however, that a driver *must* turn onto a different road once the turn signal is activated." (Emphasis added.) *McDonald*, 453 F.3d at 960. The court concluded that section 11—804(d) was not intended to address the act of proceeding on the same street after engaging a turn signal. *McDonald*, 453 F.3d at 960-61.

The *McDonald* court relied on *United States v. Miller*, 146 F.3d 274 (5th Cir. 1998), which involved a Texas statute that is substantively identical to section 11—804(d). The *Miller* court explained that " '[i]t is hard to reconcile the legislature's view that these particular uses of signaling had to be identified as violations if it intended that any other uses not specifically authorized were to be considered violations.' " *McDonald*, 453 F.3d at 961 (quoting *Miller*, 146 F.3d at 278); see also *McClure*, 218 Ill. 2d at 383 (we do not read into a statute exceptions, limitations, or conditions that depart from its plain and ordinary meaning). The *Miller* court had held that " 'a plain reading of the Code provisions at issue does not support the view that having a turn light on without turning or changing lanes is a violation of Texas law.' " *McDonald*, 453 F.3d at 961 (quoting *Miller*, 146 F.3d at 278).

In *McDonald*, the State argued that the stop nevertheless was justified because the officer was reasonable in mistakenly believing that McDonald's conduct violated the law. *McDonald*, 453 F.3d at 961. After reviewing other federal decisions, the Seventh Circuit stated that it "agree[d] with the majority of circuits to have considered the issue that a police officer's mistake of law cannot support probable cause to conduct a stop." *McDonald*, 453 F.3d at 961. The court reiterated the view that "[l]aw enforcement officials have a certain degree of leeway to conduct searches and seizures, but 'the flip side of that leeway is that the legal justification must be objectively grounded.' " *McDonald*, 453 F.3d at 961 (quoting *Miller*, 146 F.3d at 279). Thus, the court held that "[a]n officer cannot

have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law." *McDonald*, 453 F.3d at 961. In other words, "[a] stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable." *McDonald*, 453 F.3d at 962. Consistent with *McDonald*, we conclude that Deputy Lillge's mistaken belief that defendant's conduct amounted to a traffic violation did not justify the stop at its inception. See *People v. Mott*, 389 Ill. App. 3d 539, 543 (2009) ("Where a traffic stop is based upon a mistake of law, it is unconstitutional."); *People v. Cole*, 369 Ill. App. 3d 960, 968 (2007) (an officer "who mistakenly believes a violation occurred when the acts in question are not prohibited by law is not acting reasonably").

### B. Equipment of Vehicles

Next, the State argues that the traffic stop was proper because defendant's conduct violated sections of the Vehicle Code other than section 11—804(d). "An otherwise improper stop based on a mistake of law may be found reasonable and constitutional if 'the facts known to [the officer] raised a reasonable suspicion that the defendant was in fact violating the law as written.' " *Mott*, 389 Ill. App. 3d at 543-44 (quoting *Cole*, 369 Ill. App. 3d at 968). A police officer may stop a vehicle where he has reasonable suspicion to believe that a driver is violating the Vehicle Code. *Mott*, 389 Ill. App. 3d at 544; *Cole*, 369 Ill. App. 3d at 970. Thus, although Deputy Lillge incorrectly stopped and cited defendant for a violation of section 11—804(d) and the officer's mistake of law did not justify the stop, the stop will not be invalidated if the officer had another, objectively reasonable basis for the stop. See *Sorrells*, 209 Ill. App. 3d at 1069.

Deputy Lillge's motivation for stopping defendant is unclear. However, any traffic violation provides more than a reasonable basis for stopping a vehicle, and an objectively reasonable stop or other seizure is not invalid simply because the officer acted out of an improper or dual motivation.

*Sorrells*, 209 Ill. App. 3d at 1069. Whether a fourth amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind when the challenged action was taken. *Sorrells*, 209 Ill. App. 3d at 1069.

Relying on these principles, the State directs our attention to sections 12—208(b), 12—212, and 12—101(a) of the Vehicle Code, arguing that the plain language of these statutes prohibits a person from activating his turn signal and driving past three opportunities to turn. We agree with the State that these statutes prohibit flashing lights, except as authorized. However, for the most part, these statutes govern a vehicle's equipment, not the driver's conduct.

First, section 12—208(b) provides as follows:

"(b) Every motor vehicle other than an antique vehicle displaying an antique plate shall be *equipped* with an electric turn signal device which shall indicate the intention of the driver to turn to the right or to the left in the form of flashing lights located at and showing to the front and rear of the vehicle on the side of the vehicle toward which the turn is to be made. The lamps showing to the front shall be mounted on the same level and as widely spaced laterally as practicable and, when signaling, shall emit a white or amber light, or any shade of light between white and amber. The lamps showing to the rear shall be mounted on the same level and as widely spaced laterally as practicable and, when signaling, shall emit a red or amber light. An antique vehicle shall be equipped with a turn signal device of the same type originally installed by the manufacturer as original equipment and in working order." (Emphasis added.) 625 ILCS 5/12—208(b) (West 2008).

Second, section 12—212 provides in relevant part as follows:

"(b) Subject to the restrictions of this Act, flashing lights are prohibited on motor vehicles except as a means for indicating a right or left turn as provided in Section 12—208 or the presence of a vehicular traffic hazard requiring unusual care as expressly provided in Sections 11—804 or 12—215.

(c) Unless otherwise expressly authorized by this Code, all other lighting or combination of lighting on any vehicle shall be prohibited." 625 ILCS 5/12—212(b), (c) (West 2008).

Third, the relevant portion of section 12—101(a) provides that it is unlawful for a person to drive a vehicle "which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this Chapter 12, or which is equipped in any manner in violation of this Code, or for any person to do any act forbidden or fail to perform any act required under this Chapter 12." 625 ILCS 5/12—101(a) (West 2008).

The State asserts that defendant's conduct amounted to a traffic violation because sections 12—208(b) and 12—212(b) link flashing lights with a motorist's intention to turn and sections 12—212(c) and 12—101(a) generally prohibit unauthorized lights on a vehicle. We reject the proposition that these statutes govern a motorist's *use* of electric turn-signal devices. The plain and ordinary meaning of the statutes shows that the legislature intended that they pertain to how a vehicle is *equipped* with turn signals and the *condition* of that equipment.

First, our conclusion is supported by the titles of the relevant sections. Chapter 12 of the Vehicle Code is labeled "Equipment of Vehicles," and article II governs "Lights and Lamps." See 625 ILCS 5/12—201 through 12—217 (West 2008). Specifically, section 12—208 governs "Signal lamps and signal devices," section 12—212 specifies "Special restrictions on lamps," and section 12—101 is labeled "Scope and effect of equipment requirements." 625 ILCS 5/12—208, 12—212,

12—101 (West 2008). In contrast, chapter 11 of the Vehicle Code is called the "Rules of the Road." Article VIII of chapter 11 governs the "Turning and Starting and Signals on Stopping and Turning." See 625 ILCS 5/11—801 through 11—806 (West 2008). Comparing the two chapters shows that chapter 12 of the Vehicle Code governs turn-signal equipment, and chapter 11 governs turn-signal use. If the traffic stop were justified at its inception by an illegal *use* of a turn signal, the violation would have been specified in chapter 11 of the Vehicle Code, and we have concluded that it was not.

Second, the plain and ordinary meaning of sections 12—208(b) and 12—212(b) shows an intent to govern the placement and condition of turn signals rather than their use. Section 12—208(b) mentions that electric turn-signal devices are required for indicating the intention to turn, but it also specifies the function, location, and color of the signals. The signals shall be flashing lights located at and showing to the front and rear of the vehicle, on the side of the vehicle toward which the turn is to be made. Further, the front lamps shall be mounted on the same level, be spaced as widely apart as practicable, and be white, amber, or a shade in between when flashing. The rear lamps also shall be mounted on the same level, be spaced as widely apart as practicable, and be red or amber when flashing. 625 ILCS 5/12—208(b) (West 2008).

Section 12—212(b) prohibits flashing lights on vehicles except as a "means" for indicating a turn or the presence of a traffic hazard. 625 ILCS 5/12—212(b) (West 2008). The legislature's intent that section 12—212(b) refer to a turn signal's design or condition rather than its use is evident from the word "means," which in this context is defined as "an agent, tool, device, measure, plan, or policy for accomplishing or furthering a purpose." Webster's Third New International Dictionary 1398 (1986). There is no dispute that the electric turn-signal devices on defendant's car were devices for indicating a turn or the presence of a traffic hazard.

The State relies on *Griffin v. Illinois Bell Telephone Co.*, 34 Ill. App. 2d 87 (1962), for the proposition that the general prohibition on flashing lights should restrict the operation of a vehicle's lamps, including turn signals. In *Griffin*, the defendant's employee was driving a truck south, 7 to 10 miles per hour, on a two-way road. The truck driver and a coworker were inspecting power lines, and the driver had activated the left turn signal but did not intend to stop or turn. *Griffin*, 34 Ill. App. 2d at 89-90. A car driven by a woman named Avner approached the truck from the rear. The plaintiff's car then approached Avner's car from the rear so that his view of the truck was obscured. *Griffin*, 34 Ill. App. 2d at 90. Avner pulled into the left lane to pass the truck, and the plaintiff's car followed her. Avner noticed an oncoming vehicle and turned back into the southbound lane in front of the truck as soon as she could. To avoid the oncoming vehicle, the plaintiff's car decelerated and swerved behind the truck, striking the truck's rear wheels and crashing into the shoulder. *Griffin*, 34 Ill. App. 2d at 89-90.

In his civil complaint, the plaintiff alleged that the defendant was negligent for violating two sections of the Vehicle Code, including one that stated, " '[f]lashing lights are prohibited on motor vehicles, except as a means of indicating a right or left turn [or stop].' " *Griffin*, 34 Ill. App. 2d at 91 (quoting Ill. Rev. Stat. 1961, ch. 95½, par. 210(b)). Appealing from a directed finding, the plaintiff argued that the truck's flashing turn signal was *prima facie* evidence of negligence, which was a question for a jury. *Griffin*, 34 Ill. App. 2d at 92. The appellate court disagreed, concluding that there was no evidence that anyone in the plaintiff's car actually saw the flashing turn signal. *Griffin*, 34 Ill. App. 2d at 92.

The *Griffin* court stated, "[u]nder these circumstances, even conceding that violation of the statute was prima facie negligence, the violation of this statute becomes immaterial since there is no connection shown between the violation and the occurrence." *Griffin*, 34 Ill. App. 2d at 92.

Contrary to the State's assertion, the *Griffin* court did not hold that activating a turn signal without an intention to turn was a violation of the statute prohibiting flashing lights on motor vehicles. Instead, the court was assuming for the sake of argument that the truck's flashing turn signal was evidence that the defendant was *prima facie* negligent. Resolution of the issue was unnecessary to the court's analysis. The State's reliance on the *dicta* in *Griffin* is misplaced.

Finally, the State argues for the first time on appeal that the traffic stop was justified by the possibility that Deputy Lillge believed that defendant's turn signal was malfunctioning, which would have been a traffic violation. See 625 ILCS 5/12—101(a) (West 2008) (a vehicle may not be operated without required equipment being in "proper condition and adjustment"). We agree with defendant that the State has forfeited its argument that the officer had a reasonable articulable suspicion of a violation of section 12—101(a). Generally, a party forfeits its right to raise an issue on appeal by having failed to raise the issue in the trial court. See *People v. Thompson*, 337 Ill. App. 3d 849, 854 (2003) (citing *People v. Holloway*, 86 Ill. 2d 78, 91 (1981)). This rule applies to the State in cases like this one, when the prosecution is appealing the trial court's decision to grant the defendant's motion to suppress. *Thompson*, 337 Ill. App. 3d at 854. Allowing the State to present an argument for the first time on appeal prevents the defendant from presenting available, pertinent rebuttal evidence that could have a bearing on the disposition of the question. *Thompson*, 337 Ill. App. 3d at 854 (citing *Holloway*, 86 Ill. 2d at 91-92).

In this case, the State's delay in raising its new "malfunctioning turn signal" theory prevented defendant from presenting evidence and arguing in the trial court that a reasonable officer would not have considered that the defendant's turn signal was malfunctioning. Specifically, defendant was prevented from pointing out at the suppression hearing that the officer had not issued a citation for an equipment violation. Accordingly, the State has forfeited the argument by failing to raise it below.

Perhaps the officer could have formed a reasonable suspicion of an equipment violation if he had watched defendant drive a long distance or turn the wrong way while his turn signal was flashing, but there is no such evidence or argument to that effect in the record. The record does not indicate that Deputy Lillge had reason to suspect that defendant's electric turn-signal equipment was defective in any way or to suspect defendant of any wrongdoing other than activating his right turn signal and driving past three opportunities to turn. In the absence of any traffic violation or reasonable suspicion of other criminal wrongdoing, no basis existed for executing the traffic stop. See *Close*, 238 Ill. 2d at 510.

## CONCLUSION

In conclusion, we hold that the trial court did not err in quashing the arrest and suppressing the evidence, on the grounds that (1) defendant's conduct of activating his right turn signal and driving past three opportunities to turn was not a traffic violation and (2) the officer's mistake of law did not justify the stop at its inception.

For the preceding reasons, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.