THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD D. SORRELLS, Defendant-Appellant.

Fourth District No. 4—90—0038

Opinion filed March 7, 1991.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LUND delivered the opinion of the court:

Following a bench trial in the circuit court of McLean County, defendant Reginald Sorrells was found guilty of unlawful possession of cocaine (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)), and was sentenced to a term of 45 days' periodic imprisonment and 24 months' probation. Defendant appeals, contending that the trial court's denial of his motion to suppress physical evidence and incriminating statements was manifestly erroneous. We affirm.

On April 25, 1989, police stopped a car in which the defendant was traveling as a passenger and subsequently recovered a plastic bag containing less than 15 grams of cocaine. Prior to trial, defendant filed a motion to suppress, alleging that there was no probable cause to support the police stop of the car in which he was a passenger. The cause proceeded to a suppression hearing, where the witnesses explained the circumstances surrounding defendant's arrest.

Officer Brendan Heffner of the Normal police department is assigned to a narcotics unit headed by the Illinois State Police. He testified that on April 10, 1989, he received information from a confidential informant that the defendant had twice traveled to Chicago, Illinois, to purchase cocaine and then returned to the Illinois State University campus in Normal, Illinois, where he distributed it. The informant stated that defendant traveled to and from Chicago in a silver 1983 Chevrolet Camaro, license No. MK2832, which belonged to Mark Bauer. The informant told Heffner that the defendant would travel to Chicago and return to Normal on the same day.

On April 20, 1989, the informant told Heffner that the defendant, Bauer, and two other named individuals were going to Chicago in Bauer's car to purchase cocaine. The informant explained that they would leave at approximately 5:30 p.m. and return at approximately 11 p.m. Although Heffner observed the described automobile leaving the Bloomington-Normal area on Interstate 55, he did not see the Camaro return to the area. Later that evening, the informant contacted Heffner and told him that the defendant had returned. The informant also told Heffner where the Camaro was parked. Heffner proceeded to the described location and found a silver Camaro matching the informant's description. The car's hood was warm to the touch. Heffner contacted the Secretary of State and learned that the Camaro was, in fact, registered to Mark Bauer.

In the early afternoon of April 25, 1989, the informant advised Heffner by telephone that the defendant and Bauer were going to Chicago that day to obtain some cocaine. The informant advised Heffner that the defendant and Bauer would be traveling on Interstate 55

in Bauer's car and, on their return, might use the Veterans' Parkway exit and enter Normal on Pine Street rather than taking Interstate 55 to Route 51. The informant explained that the former route was more secluded and there was less possibility of police being present. Sometime later, the informant called Heffner and advised him that Bauer did not leave for Chicago and that the defendant was accompanied by a black man named Mike and a white man named James Kimnetz. After receiving this tip, Heffner and other task force agents "tried to devise a way to set up a stop on the vehicle as it was returning from Chicago."

Heffner testified that he initially contacted the informant when he learned the informant might be involved in, or have information pertaining to, illegal drug activities in the Bloomington-Normal area. Heffner stated that the informant had not been arrested for any drug-related offense and was not in the employ of any law enforcement agency. Heffner also explained that the informant was neither threatened nor promised any favors by any officer of the Normal police department. After Heffner's initial contact, the informant came to his office for an interview. The informant told Heffner that the information was obtained by hearing the defendant discuss his plans in the informant's presence.

Paul Lehman is a patrol sergeant for the Normal police department. At approximately 11 p.m. on April 25, Lehman received instructions from the Illinois State Police Department of Criminal Investigation (DCI) that a gray Camaro with a white male and a black male occupant would be coming into Normal in the southbound lanes of Interstate 55, and "that they would want us to stop it if we could develop some type of probable cause." Lehman and Officer Kerry Lonbom proceeded to Interstate 55 and parked their squad car approximately one mile north of the Veterans' Parkway exit, with their radar unit set on the southbound lanes. They were advised of the suspects' approach by State Police officers stationed further north on Interstate 55. As the Camaro passed, the radar unit displayed a reading of 73 miles per hour. The posted speed limit in that area is 65 miles per hour.

As Lehman and Lonbom followed the Camaro, the Illinois State Police advised them where and how the traffic stop was to be conducted. Shortly after the Camaro turned into the Veterans' Parkway exit, Lehman and Lonbom activated the red lights and stopped the Camaro. As Lehman approached the passenger side of the Camaro, he noticed that the black male in the backseat of the car appeared to be "stuffing something under a gym bag or underneath some clothing

that was under there." Lehman also observed that the black male in the front passenger seat "either appeared to be loosening his clothing or putting something down his pants or something in the belt area." While Lonbom asked the driver, James Kimnetz, for identification, Lehman asked the defendant and the backseat passenger, Michael Stewart, to exit the car and go back to his squad car. After additional units from the Illinois State Police and Normal police departments arrived, Kimnetz, the defendant, and Stewart were instructed to line up with their hands on the hood of Lehman and Lonbom's squad car. Lehman explained that the suspects were asked to do so for the protection of the officers and to ensure that evidence was not destroyed. As the suspects stood against the squad car, Lehman observed a plastic bag drop from waist height to the ground between the feet of the defendant. After Lehman recovered the plastic bag and observed that it contained a white powdery substance, all three suspects were searched, handcuffed, and placed in separate squad cars. No citations were issued to the driver of the Camaro for violation of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 1—101 *et seq.*).

Officer Michael Bernadini, a special agent for DCI, testified that on April 25, 1989, he supervised a special detail of officers who met in the Chenoa, Illinois, area to await the return of Mark Bauer's Camaro from Chicago. The Camaro passed Bernadini's unmarked unit at an excessive rate of speed. Bernadini followed the Camaro until Officers Lonbom and Lehman initiated a traffic stop. Bernadini explained that the defendant and Stewart were not asked to leave the vehicle until Kimnetz, the driver, consented to a search of the car.

On cross-examination, Bernadini admitted his report stated that Lehman and Lonbom received a radar reading of 63 miles per hour on the suspect car. He stated that he was not really concerned with the car's speed and did not recall who gave him the information. Bernadini also admitted that he intended to have the suspect car stopped regardless of whether a radar unit verified it was exceeding the speed limit.

The trial court denied defendant's motion to suppress, reasoning there was uncontroverted evidence that the car was traveling in excess of the speed limit. The court also concluded that regardless of the legitimacy of the traffic stop for speeding, the police had probable cause to stop the car on the basis of the information provided by the informant. Defendant's sole contention on appeal is that the police lacked probable cause to stop the car in which he was traveling.

A reviewing court will not disturb a trial court's ruling on a motion to suppress unless it is manifestly erroneous. If the trial

court had a substantial basis for concluding that probable cause existed, the ruling will be undisturbed. (*People v. Adams* (1989), 131 Ill. 2d 387, 400, 546 N.E.2d 561, 567; *People v. Tisler* (1984), 103 Ill. 2d 226, 248, 469 N.E.2d 147, 158.) We conclude that the evidence indicating the car exceeded the posted speed limit provided a substantial basis for the trial court's finding that the stop of the car was supported by probable cause.

■ A traffic violation provides more than a reasonable basis for stopping a vehicle. (*People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 501, 551 N.E.2d 767, 769; *People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 1010-11, 542 N.E.2d 1148, 1151.) We recognize that it was not a mere coincidence that the Camaro encountered a radar unit as it entered the Bloomington-Normal area, and that the car may have been stopped even if it was not exceeding the speed limit. However, an objectively reasonable stop or other seizure is not invalid simply because the officer acted out of an improper or dual motivation. (*Guerrieri*, 194 Ill. App. 3d at 502, 551 N.E.2d at 770; *United States v. Smith* (11th Cir. 1986), 799 F.2d 704, 708.) Whether a fourth amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken. *Maryland v. Macon* (1985), 472 U.S. 463, 470-71, 86 L. Ed. 2d 370, 378, 105 S. Ct. 2778, 2783; *Guerrieri*, 194 Ill. App. 3d at 502, 551 N.E.2d at 770.

■ In this case, Officers Lehman and Lonbom acted reasonably in stopping the Camaro since it is their duty to enforce the Illinois Vehicle Code. The fact that the driver was not charged with a traffic offense has no effect on the trial court's determination that there was probable cause to stop the car. Probable cause will not be invalidated by a later determination not to charge a person with the offense for which he was originally stopped. An officer may always warn of a traffic violation or reprimand the driver without citing him, and the officer need not charge a minor violation when, after a stop, a more serious violation is discovered. *People v. Assenato* (1989), 186 Ill. App. 3d 331, 337, 542 N.E.2d 457, 460, *cert. denied* (1990), 493 U.S. 1027, 107 L. Ed. 2d 754, 110 S. Ct. 736.

■ We acknowledge that there was conflicting testimony regarding the speed of the car in which the defendant was traveling. Officer Lehman testified that the radar displayed a reading of 73 miles per hour as the Camaro traveled through a 65-mile-per-hour zone. Officer Bernadini, who was not present in the radar unit, filed a report stating that Lehman and Lonbom received a radar reading of 63 miles

per hour. Bernadini may have been told that the suspect vehicle was exceeding the speed limit by eight miles per hour and mistakenly assumed that it was clocked in a 55-mile-per-hour zone, or he may have simply forgotten what he was told. In any case, it is not for the reviewing court to determine the weight and credibility of evidence. It is the province of the court hearing the motion to suppress to determine the witnesses' credibility and the weight to be given their testimony, since it had the advantage of observing their demeanor while testifying. (*Guerrieri*, 194 Ill. App. 3d at 503, 551 N.E.2d at 771.) We cannot say, on the basis of the record, that the trial court's conclusion that the suspect car was exceeding the speed limit was manifestly erroneous.

Because we find the stop to be reasonable based upon the speeding violation, we need not address the reliability of the anonymous informant's tip.

Affirmed.

SPITZ and KNECHT, JJ., concur.