THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DALE DIONESOTES, Defendant-Appellant.

Second District   No. 2—91—0523

Opinion filed September 25, 1992.—Modified on denial of
rehearing November 18, 1992.

Joseph T. Bugos, of Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Jerome P. Genova, of
Dyer, Indiana (William L. Browers, of State's Attorneys Appellate Prosecu-
tor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:
Defendant, Dale Dionesotes, was charged with driving under the
influence of alcohol pursuant to section 11—501 of the Illinois Vehicle
Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501). His driving privi-
leges were summarily suspended. After a hearing to rescind the sus-
pension of his driving privileges, an order was entered affirming the

suspension. Defendant appeals this order. We reverse and remand for further proceedings.

On March 21, 1991, at approximately 2:30 a.m., two officers observed defendant's vehicle traveling northbound on Villa Avenue in Villa Park at approximately 10 miles per hour. The posted speed limit on this street is 25 miles per hour. The officers were on break outside of a White Hen Pantry, also on Villa Avenue. When defendant's car reached a point approximately 75 feet from the officers, it stopped for approximately 1½ minutes. Defendant's car then pulled away northbound at a slow rate of speed. At this point, the officers decided to follow defendant's vehicle. Defendant's vehicle proceeded for a block and a half and stopped for a red light. When the light turned green, the officers activated their overhead Mars lights. Defendant's vehicle traveled through the intersection and continued for another block and a half before it pulled to the right and stopped.

According to the arresting officer's report, defendant had the strong smell of alcohol on his breath, watery and glassy eyes, and admitted to consuming alcohol. In addition, defendant failed a field sobriety test. The report also mentioned that defendant's vehicle stopped in the middle of the street for no apparent reason. Based on this report, defendant's driver's license and privilege to drive a motor vehicle were suspended pursuant to section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch: 95½, par. 11—501). The confirmation of statutory summary suspension form indicated that the suspension was to last for a three-month period.

On May 2, 1991, a hearing was held on a petition for judicial review of the statutory summary suspension. At the conclusion of this hearing, the court ruled in favor of the State. Defendant subsequently petitioned the court to rescind the statutory summary suspension. This petition was denied as was defendant's motion to reconsider.

Defendant argues that the trial court's summary suspension of defendant's driving privileges was against the manifest weight of the evidence because the initial investigatory stop of defendant was improper.

An officer may make a valid investigatory stop of a vehicle absent probable cause to arrest, provided the officer's decision is based on specific and articulable facts and reasonable inferences therefrom which warrant the investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) This rule has been codified in section 107—14 of the Code of Criminal Procedure of 1963, which provides:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable

period of time *when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense* as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 107—14.

■ Thus, an officer may stop a vehicle if he reasonably infers from the circumstances that an occupant has committed, or is about to commit, an offense. (*People v. Houlihan* (1988), 167 Ill. App. 3d 638, 642.) When an officer's actions are examined, an objective standard is used to determine whether the facts available to the officer warrant a person of reasonable caution to believe that the action which the officer took was appropriate. A mere suspicion or a hunch on the officer's part is insufficient to justify a *Terry* stop. *Houlihan*, 167 Ill. App. 3d at 642.

The fourth amendment to the United States Constitution is the wellspring which feeds the growth of legal guidelines surrounding *Terry* stops. Specifically, the amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." U.S. Const., amend. IV.

As with other categories of police action subject to fourth amendment constraints, the reasonableness of a *Terry* stop depends upon a balancing of the public's interest and the individual's right to personal security and freedom. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434.) The elements necessary to justify a *Terry* stop are intended to prevent the police from having absolute discretion to intrude into the lives of the occupants of motor vehicles. *People v. James* (1976), 44 Ill. App. 3d 300, 303.

Viewing the present case from a perspective provided by the guidelines identified in the authority cited above, we determine that the officers in the present case lacked the specific and articulable facts necessary to make a valid *Terry* stop under the fourth amendment.

■ In the present case, defendant drove slowly and stopped his car in the middle of the street for a short period of time. These facts do not support a reasonable inference that defendant is committing, is about to commit, or has committed an offense. The arresting officer himself admitted that he was not necessarily "suspicious" but, instead, found the behavior to be "unusual." The officer failed to identify the crime or potential crime that prompted him to stop defendant

and, in fact, admitted that he did not observe any traffic violations. Moreover, the trial court made no finding regarding what, if any, crime had occurred, was occurring, or was about to occur. The court merely asserted:

> "The average person driving a motor vehicle may stop in the middle of the street but isn't going to stop there for a minute to a minute and a half.
>
> And I think that that is unusual conduct that the police officer if he is doing his job he is going to check it out."

We determine that unusual behavior alone does not necessarily support a reasonable suspicion that a crime has occurred, is occurring or is about to occur. Without more, a proper basis to make a *Terry* stop has not been established.

In our view, the fourth amendment protections of personal security and freedom would be severely undermined if the police were permitted to stop those individuals whose behavior was deemed to be of an "unusual" nature rather than a criminal one. We determine that the present stop resulted from a "mere hunch" and, therefore, impermissibly infringed upon defendant's fourth amendment right to be secure in his person against unreasonable searches and seizures.

In *People v. Deppert* (1980), 83 Ill. App. 3d 375, the defendant, at 4:45 a.m., drove his car at a speed of 10 to 15 miles per hour in a 35-mile-per-hour zone, pulled into a railroad yard, turned his car around, and proceeded slowly in the opposite direction. A police officer made a *Terry* stop of the defendant and discovered firearms in the defendant's possession. The appellate court determined that the officer had no authority to stop the defendant because there were no articulable facts sufficient to indicate that the defendant was committing, was about to commit, or had committed a crime. The officer in *Deppert* explained that he stopped the defendant to see if he was having trouble with his car or was lost or looking for someone. The court found these reasons insufficient to justify a *Terry* stop. In the present case, the arresting officer explained that his concerns about defendant's behavior were that defendant was either having some problem or was lost. As in *Deppert*, we determine that this explanation does not justify a *Terry* stop.

A similar set of facts is presented in *People v. Reusch* (1991), 209 Ill. App. 3d 991, where an officer pulled the defendant over because the officer believed the defendant was having car trouble. The appellate court found this explanation insufficient cause to justify a *Terry* stop and granted the defendant's petition to rescind the statutory summary suspension of his driver's license which was levied against

the defendant for driving under the influence of alcohol. In reversing, the appellate court held that the trial court's decision was against the manifest weight of the evidence. (*Reusch*, 209 Ill. App. 3d at 993.) Applying this standard to the present case, we hold that the trial court's decision was against the manifest weight of the evidence, and we vacate the court's order confirming the summary suspension of his driving privileges.

The judgment of the circuit court of Du Page County is reversed in part, vacated in part, and the cause is remanded for further proceedings consistent with this opinion.

*Reversed in part; vacated in part and remanded.*

UNVERZAGT and WOODWARD, JJ., concur.