No. 2--01--0660 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

  )  

Plaintiff-Appellee, ) 

                                )                

v.                               ) No. 00--CF--2645

)

KAREN ISAAC,       ) Honorable

) Ann Brackley Jorgensen,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Following a stipulated bench trial, defendant, Karen Isaac, was convicted of driving under the influence of drugs or alcohol (625 ILCS 5/11--501(a)(5) (West 2000)) and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2000)) and sentenced to 24 months' probation.  She appeals, contending that (1) the trial court erred in denying her motion to quash her arrest and suppress evidence because the arresting officer did not have reasonable grounds to stop her car, and (2) the court erred in conducting a bench trial without determining that defendant had knowingly waived a jury trial.

Defendant was arrested following a traffic stop.  She moved to quash the arrest and suppress evidence.  At the hearing, the parties stipulated to the testimony of Bloomingdale police officer Tony Pagan.  According to the stipulation, Pagan would have testified that he was on routine patrol at about 3 a.m. on October 1, 2000.  He was driving west on Lake Street, which in that area has two westbound lanes and a speed limit of 40 miles per hour.  In Pagan's opinion, the regular flow of traffic on that section of Lake Street is 45 to 50 miles per hour.  The weather that morning was clear and road conditions were normal.

Driving in the westbound curb lane, Pagan pulled up behind a silver Buick that appeared to be traveling below the speed limit.  He paced the car and found it was going about 30 miles per hour.  As he did this, cars began to back up behind him until about six vehicles, not including the officer's squad car, reduced their speed behind the Buick.

According to the written stipulation in the record, "in addition to obseving [
sic
] the congestion of traffic behind his vehicle, [Pagan] formulated a subjective concern over why the Buick was traveling below the posted speed limit, and, accordingly, effected a traffic stop."  Defendant was the driver of the Buick.  Ultimately, Pagan arrested her for driving under the influence and possession of a controlled substance.  He also issued her a ticket for violating the "minimum speed regulation."  (The stipulation cites to "625 ILCS 511--600(a)," but presumably refers to section 11--606(a) (625 ILCS 5/11--606(a) (West 2000)), which prohibits driving so slowly as to impede the flow of traffic.)

The trial court denied the motion to quash and suppress.  Citing 
People v. Quigley
, 226 Ill. App. 3d 598 (1992), the court ruled that the stop was justified by the officer's community caretaking function, implicitly rejecting the State's contention that the purported traffic violation justified the stop.  The court denied defendant's motion to reconsider.  Following a stipulated bench trial, the court found defendant guilty.  Defendant timely appeals.

Defendant contends that the court erred in denying her motion to quash and suppress because the officer lacked reasonable grounds for the traffic stop.  Defendant argues that this case is indistinguishable from 
People v. Dionesotes
, 235 Ill. App. 3d 967 (1992), which held that merely driving slowly did not provide reasonable grounds for a traffic stop.  The State responds that this case is distinguishable from 
Dionesotes
 because the officer reasonably suspected defendant of violating a specific traffic law and issued a ticket for that offense.

Generally, a stop for a minor traffic violation is considered a 
Terry
 stop (
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)).  
People v. Smith
, 315 Ill. App. 3d 772, 775 (2000).  A 
Terry
 stop is permissible if the officer has a reasonable suspicion "that the person has committed, or is about to commit, a crime."  
People v. Brownlee
, 186 Ill. 2d 501, 518 (1999).   In reviewing a ruling on a motion to suppress and to quash arrest, we must accept the trial court's factual findings unless they are against the manifest weight of the evidence. 
 
People v. Gonzalez
, 324 Ill. App. 3d 15,
 18 (2001)
.  If we accept the trial court's findings, we review 
de novo
 whether suppression is warranted under these facts.  
People v. Gonzalez
, 184 Ill. 2d 402, 412 (1998).  Because the parties here proceeded on stipulated evidence, the trial court's fact-finding role was limited and, giving appropriate weight to the inferences the trial court drew from the facts, our primary function is to review 
de novo
 whether the facts justified the stop at issue.

In 
Dionesotes
, an officer observed defendant driving about 10 miles per hour on a residential side street where the speed limit was 25 miles per hour and then come to a complete stop for more than a minute.  We rejected the contention that defendant's driving justified a traffic stop, holding that "unusual behavior alone does not necessarily support a reasonable suspicion that a crime has occurred."  
Dionesotes
, 235 Ill. App. 3d at 970.

In 
Dionesotes
, the officer did not identify a specific offense she thought defendant was committing, but merely found his behavior "unusual."  Of course, observing a driver violating a statute warrants a traffic stop.  See 
Smith
, 315 Ill. App. 3d at 775.  However, at a minimum, the officer must reasonably believe that the driver is violating a traffic law.

Here, the officer ticketed defendant for violating section 11--606(a) of the Vehicle Code.  That section prohibits driving "at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation of [a] vehicle or in compliance with law."  625 ILCS 5/11--606(a) (West 2000).

The issue here is whether defendant was actually impeding any traffic.  Although the undisputed facts show that six cars were lined up behind defendant and Officer Pagan, the undisputed facts also show that the road had two westbound lanes.  Why the other cars did not simply use the other lane to pass is not clear.  Defendant surmises that the other drivers were reluctant to pass a squad car at 3 a.m.  At any rate, because Pagan came up directly behind defendant, it appears that no cars were backed up behind her before Pagan started following her.

We are aware of no reported Illinois case in which a violation of section 11--606(a) was the basis for a traffic stop.  Cases from other jurisdictions have held that "impeding traffic" statutes may be the basis for a valid traffic stop if there is evidence that a defendant's slow driving was directly responsible for slowing other traffic.  See 
State v. Haataja
, 611 N.W.2d 353, 355 (Minn. App. 2000) (evidence that traffic was "backed up" behind defendant); 
Ledford v. State
, 237 Ga. App. 712, 714, 516 S.E.2d 565, 567 (1999) (evidence that truck slowed down behind defendant; moreover no seizure occurred because officer merely approached defendant's stopped car to ask questions).

On the other hand, in 
State v. Hagerty
, Nos. 2001--P--0083, 2001--P--0084 cons. (Ohio App. 2002), an officer followed defendant's car on a four-lane highway to gauge its speed.  The court noted that the only car actually impeded was that of the officer and he could easily have gone around her.  The only reason that he followed her was to track her speed, not because he was impeded.  In 
Richardson v. State
, 39 S.W.3d 634 (Tex. App. 2000), the court found a traffic stop for allegedly impeding traffic unreasonable where "there was little or no traffic on the road for appellant to impede."  A videotape showed only one car pass defendant and no other cars following or waiting to pass.  
Richardson
, 39 S.W.3d at 639.

Here, it was not reasonable to believe that defendant was violating the statute against impeding traffic.  Although at least six cars were driving behind her, it appears that they simply could have gone around her in the other westbound lane.

The stipulated evidence shows that the officer's primary concern was not a statutory violation, but curiosity about why defendant was driving the way she was.  According to the stipulation, in addition to observing 
the "congestion of traffic" behind his vehicle, the officer "formulated a subjective concern over why the Buick was traveling below the posted speed limit."  The ticket for the minimum speed violation appears to have been an afterthought.

To hold otherwise would give police virtually unfettered discretion to stop a vehicle at any time.  A driver traveling one mile per hour above the posted speed limit would be speeding while one traveling one mile per hour below the limit would be guilty of impeding traffic.  Given that pretextual stops--using a minor traffic violation to attempt to discover evidence of a more serious offense--are constitutionally permissible (
People v. Juarbe
, 318 Ill. App. 3d 1040, 1051
 (2001), citing 
Whren v. United States
, 517 U.S. 806, 135 L. Ed. 2d 89, 98, 116 S. Ct. 1769 (1996)), the police already have wide latitude to effect a traffic stop based on one of a myriad of minor violations that might not otherwise merit scrutiny.  To permit, without more, a stop of someone driving cautiously and below the posted speed limit would allow police to stop virtually anyone at any time without waiting to witness a discreet traffic violation.

We also reject the State's assertion that the stop can be justified under the community caretaking function of the police.  A community caretaking encounter involves no coercion or detention and thus does not involve a "seizure."  
Gonzalez
, 324 Ill. App. 3d at 19; 
People v. Leifker
, 307 Ill. App. 3d 25, 28 (1999).  In 
City of Highland Park v. Lee
, 291 Ill. App. 3d 48, 54 (1997), we held that an officer's use of emergency lights to effect a traffic stop was a show of force amounting to a seizure.  We rejected 
Quigley
, upon which the trial court relied, to the extent it held that such a detention was consistent with the community caretaking function.  
Lee
, 291 Ill. App. 3d at 53.  Here, the officer effected a traffic stop.  Community caretaking is based on the assumption of a voluntary encounter, and the traffic stop removed this case from its ambit.

Because the traffic stop was not supported by reasonable grounds that defendant was committing an offense, the circuit court erred in denying the motion to quash and suppress.  Without the suppressed evidence, there would be no evidence to prove defendant's guilt.  Therefore, we reverse defendant's convictions. Because of our resolution of this issue, we need not reach defendant's second contention.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN and KAPALA, JJ., concur.