802 N.E.2d 850 (2003)
344 Ill. App.3d 1058
280 Ill.Dec. 599
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
James J. KELLY, Defendant-Appellant.
No. 2-02-0274.
Appellate Court of Illinois, Second District.
December 10, 2003.
*851 Donald J. Ramsell, Christopher B. Klis, Ramsell & Armamentos, Wheaton, for James J. Kelly.
Joseph E. Birkett, Du Page County State's Attorney, Wheaton, Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, Elgin, Bonnie C. McGrath, Chicago, for the People.
Justice O'MALLEY delivered the opinion of the court:
Defendant, James J. Kelly, was charged in the circuit court of Du Page County with driving under the influence of alcohol (625 ILCS 5/11-501(a)(1), (a)(2) (West 2000)), driving while his license was suspended (625 ILCS 5/6-303(a) (West 2000)), *852 and disobeying a traffic-control device. While defendant's ticket indicates that disobeying a traffic-control device is a violation of section 11-306 of the Illinois Vehicle Code (Code) (625 ILCS 5/11-306 (West 2000)), disobeying a traffic-control device is actually a violation of section 11-305(a) (625 ILCS 5/11-305(a) (West 2000)), which provides that a driver shall obey the instructions of a traffic-control device. Section 11-306, in turn, frames section 11-305(a) by providing the instructions for various traffic-control devices. 625 ILCS 5/11-306 (West 2000). Because of the nature of this case, however, this distinction is irrelevant. Defendant moved to quash his arrest and suppress evidence. The trial court denied the motion. Following a stipulated bench trial, the court found defendant guilty of all three offenses and sentenced him to two years' probation. On appeal, defendant contends that the trial court erred in denying his motion to suppress. We affirm.
At the hearing on the motion to suppress, the arresting officer testified that, while on routine patrol, he encountered a vehicle operated by defendant that was stopped at a red light on Washington Street in Naperville. Defendant was in the left lane and the officer was stopped directly behind him. When the light turned green, defendant's vehicle remained at a standstill. After three vehicles in the adjacent lane proceeded through the intersection, the officer activated his vehicle's emergency lights. The officer testified that, at this point, approximately 20 seconds had elapsed since the light had turned green. Defendant then proceeded through the intersection and pulled over.
Defendant emerged from the vehicle, and the officer observed him swaying slightly. The officer testified that he detected the odor of alcohol on defendant's breath. In addition, defendant's eyes were glassy and his speech was slurred. Defendant admitted that he had been drinking that evening. With defendant's consent, the officer administered field sobriety tests. According to the officer, defendant's performance was unsatisfactory and the officer placed defendant under arrest.
In support of his motion, defendant contended that his "brief" delay in proceeding after the light turned green did not constitute disobeying a traffic-control device. The trial court denied the motion, and defendant moved for reconsideration. In denying the motion for reconsideration, the trial court stated that defendant's conduct violated section 11-1303(a) of the Code (625 ILCS 5/11-1303(a) (West 2000)), which prohibits stopping, standing, or parking in specified places. Following a stipulated bench trial, defendant was found guilty of the charged offenses. This appeal followed.
In reviewing a ruling on a motion to suppress, we will accord great deference to the trial court's factual findings, and reverse those findings only if they are against the manifest weight of the evidence. People v. Sorenson, 196 Ill.2d 425, 431, 256 Ill.Dec. 836, 752 N.E.2d 1078 (2001). However, we review de novo the ultimate legal question of probable cause or reasonable suspicion. Sorenson, 196 Ill.2d at 431, 256 Ill.Dec. 836, 752 N.E.2d 1078.
Defendant argues that the arresting officer had no justification to stop him because his "brief" or "momentary" delay in proceeding through the intersection did not constitute disobeying a traffic-control signal under the Code. This argument presents a question of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, which is best determined from the plain language of the *853 statute. In re Marriage of Flannery, 328 Ill.App.3d 602, 605-06, 263 Ill.Dec. 274, 768 N.E.2d 34 (2002). In determining intent, a court may also consider the reason and necessity of the law, the evil sought to be remedied, and the purpose to be achieved. People v. Hockenberry, 316 Ill.App.3d 752, 756, 250 Ill.Dec. 111, 737 N.E.2d 1088 (2000).
The offense of disobeying a traffic signal is created and defined by two different Code sections. Section 11-305(a) provides that a driver "shall obey the instructions of any official traffic-control device." 625 ILCS 5/11-305(a) (West 2000). Section 11-306, in turn, provides the instructions for traffic signals. With respect to green lights it provides: "[v]ehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn." 625 ILCS 5/11-306(a)(1) (West 2000).
Defendant argues that the legislature did not intend that a "brief" or "momentary" delay in proceeding through an intersection would constitute a violation of the directions set forth in section 11-306(a)(1). Defendant bases this argument largely on the fact that section 11-306(a)(1) does not explicitly set a time limit within which a driver must proceed after a traffic light turns green. According to defendant, it is evident from the fact that drivers must ascertain that it is safe to proceed before entering an intersection that a "brief" or "momentary" delay is permissible. The problem with this argument is that defendant's 20-second delay in entering the intersection was neither "brief" nor "momentary."
We do not quarrel with defendant's general premise that a brief or momentary delay in proceeding through an intersection is permissible under section 11-306(a)(1). While, read literally, section 11-306(a)(1) gives a driver no time to react to a green light because it does not specify any type of grace period for a driver to proceed, that which is implied in a statute is as much a part of it as that which is expressed. Martinez v. County of Stephenson, 268 Ill.App.3d 427, 430, 206 Ill. Dec. 157, 644 N.E.2d 1210 (1995). We agree with defendant that it is implied under section 11-306(a)(1) that a driver is allowed a reasonable period of time to react to the signal change and ascertain that it is safe to proceed.
That said, 20 seconds is not a reasonable period of time. Defendant characterizes his delay in entering the intersection as "brief" and "momentary." Similarly, the dissent describes defendant's delay as "relatively insignificant." Op. 280 Ill.Dec. at 607, 802 N.E.2d at 858. Defendant's argument fails, not because a motorist's "brief" or "momentary" or "insignificant" delay at an intersection necessarily violates the Code, but because none of these terms accurately describe defendant's conduct. Twenty seconds is a long time in the context of a traffic light. As the trial court pointed out, 20 seconds may seem like "a minute and-a-half to five minutes" to cars stopped behind a car that fails to proceed at a green light. Further, except under very unusual circumstances, 20 seconds is much longer than is necessary to check to make sure that it is safe to proceed. The dissent's conclusion that a 20-second delay is "relatively insignificant" is based in its view that a driver who remains stopped at a green light for 20 seconds may be changing a radio station or "glancing" at a map. Op. 280 Ill.Dec. at 607, 802 N.E.2d at 858. The problem with this is that the dissent has greatly exaggerated the time necessary to accomplish these two tasks; it takes at most a couple of seconds to change a radio station or to glance at anything. Thus, the fact that changing a *854 radio station or a glancing at a map might be reasonable activities at an intersection does not support the proposition that 20 seconds is a reasonable amount of time to spend stopped at a green light. Moreover, if a motorist wishes to peruse rather than glance at a map or to scan his radio until he finds entertainment to his liking, a green light is not an appropriate place to take such a leisurely sojourn. Accordingly, we see no reason to overturn the trial court's implicit finding that defendant's 20-second delay while facing a green light was unreasonable.
The dissent argues that section 11-306(a)(1) is permissive. In doing so, the dissent goes much further than defendant. The dissent seizes on the word "may" in section 11-306(a)(1), asserting that it denotes that the direction to "proceed straight through or turn right or left" is a suggestion rather than a command. Op. 280 Ill.Dec. at 605, 802 N.E.2d at 856. However, "[w]here the rights of the public * * * are involved, statutory language importing permission or authority may be read as mandatory * * * whenever * * * such a construction is made necessary by the evident intention of the legislature." R.L. Polk & Co. v. Ryan, 296 Ill.App.3d 132, 140, 230 Ill.Dec. 749, 694 N.E.2d 1027 (1998). We believe that it is clear that the legislature intended section 11-306(a)(1) to be mandatory.
Significantly, the dissent's reading of section 11-306(a)(1) directly contradicts the statute's purpose of promoting safety and efficiency because it leads to the absurd result that cars may stop indefinitely at an intersection. The purpose of a traffic-control device is to "promote highway safety and efficiency by providing for the orderly movement of all road users." Illinois Department of Transportation, Illinois Manual on Uniform Traffic Control Devices § 1A.01 (2000), adopted pursuant to 625 ILCS 5/11-301 (West 2000). Under the dissent's reading of section 11-306(a)(1), a car may stop indefinitely at a green light. This interpretation, rather than promoting orderly movement of traffic, allows stoppage of traffic for no reason at all. Such a rule is inconsistent with safety, efficiency, and the orderly movement of traffic because it causes traffic congestion with no corresponding benefit.
We also point out that the dissent's interpretation is illogical because section 11-306(a)(1) is virtually meaningless if it is permissive. The function of section 11-306(a)(1) is to specify what a driver may do at a green light. According to the dissent, despite what 11-306(a)(1) specifies, a driver may do anything he wishes at a green light, at least if it is not elsewhere prohibited. Thus, under the dissent's reading, section 11-306(a)(1) is without effect. We do not believe that this was the intent of the legislature.
Next, for reasons that are unclear, the dissent emphasizes that section 11-306(a)(1) "merely provides motorists with a legend or `definition' of each signal on a traffic-control device." Op. 280 Ill.Dec. at 606, 802 N.E.2d at 857. True as this may be, the section that immediately precedes section 11-306 in the Code, section 11-305(a), provides that "[t]he driver of any vehicle shall obey the instructions of any official traffic-control device." 625 ILCS 5/11-305(a) (West 2000). As previously stated, defendant's actual offense of failure to obey a traffic-control device was created by section 11-305(a). Our discussion of section 11-306(a)(1) is necessary because that section provides the instructions for a green light.
While it is true that ambiguities in a penal statute generally are construed strictly in favor of defendants (People v. Whitney, 188 Ill.2d 91, 97-98, 241 Ill.Dec. 770, 720 N.E.2d 225 (1999)), this rule does *855 not require us to interpret a statute in a manner that yields an absurd result, particularly where, as here, that result runs directly contrary to the purpose of the statute. People v. Crump, 296 Ill.App.3d 758, 760, 231 Ill.Dec. 163, 695 N.E.2d 1282 (1998).
Even if we were to hold that the arresting officer did not have probable cause to believe that defendant had disobeyed a traffic-control device our result would be the same. As the trial court pointed out, defendant also violated section 11-1303 of the Code (625 ILCS 5/11-1303 (West 2000)), which prohibits standing. Although defendant was charged with violating section 11-306, a defendant need not be charged with the offense for which he is stopped. People v. Sorrells, 209 Ill.App.3d 1064, 1069, 154 Ill.Dec. 497, 568 N.E.2d 497 (1991). Defendant's standing for 20 seconds in front of a traffic light clearly fits within the plain language of section 11-1303:
"Except where necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic-control device, no person shall:
* * *
2. Stand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge passengers:
* * *
d. Within 30 feet upon the approach of any flashing signal, stop sign, yield sign, or traffic control signal located at the side of a roadway[.]" 625 ILCS 5/11-1303 (West 2000).
Defendant again argues that his "brief" and "momentary" delay does not violate this section because of an implied grace period in the statute. We reject this argument for the same reason as defendant's previous argument: Defendant's delay was neither brief nor momentary.
The dissent argues that there is no evidence that defendant was within 30 feet of a traffic light. Op. 280 Ill.Dec. at 607, 802 N.E.2d at 858. This argument is flawed because we defer to the trial court on factual findings. It can be readily inferred from the testimony presented at the hearing on the motion to suppress that defendant was the first car at the traffic light. Based on this fact, it is unreasonable to suggest that defendant was not within 30 feet of a traffic signal. Moreover, the burden of proving that the traffic stop was unlawful was on defendant. 725 ILCS 5/114-12 (West 2000). Additionally, defendant has at no time argued that he was not within 30 feet of the traffic signal.
Finally, defendant cites People v. Dionesotes, 235 Ill.App.3d 967, 177 Ill.Dec. 337, 603 N.E.2d 118 (1992), which held that there was no basis to stop a motorist who had been driving 10 miles per hour on a street with a 25-mile-per-hour speed limit at 2:30 a.m. and who had stopped his car in the middle of the street for 1½ minutes before continuing at a slow rate of speed. We find Dionesotes to be of little precedential value because it dealt with a unique set of facts where the officer who made the traffic stop stated somewhat curiously that he subjectively did not suspect the defendant of any crime or traffic offense but merely found the defendant's conduct to be "unusual." Dionesotes, 235 Ill.App.3d at 969-70, 177 Ill.Dec. 337, 603 N.E.2d 118. As Dionesotes acknowledges, the legality of the stop in that case was governed by the rule set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under Terry, in order to justify a particular intrusion such as a traffic stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences *856 from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. Terry is an objective test. Notwithstanding the officer's apparent subjective belief that the defendant's behavior was merely unusual, he would have been objectively reasonable in suspecting the defendant of driving under the influence of alcohol based on the foregoing facts. We observe that it is an odd police officer indeed who would not at least suspect that a driver exhibiting the behavior exhibited by Dionesotes was impaired. In our view, it would be a dereliction of duty not to make a brief stop of such a motorist to determine the reason for the apparent impairment, at least where the police officer subjectively suspects that the driver is impaired. In fact, under somewhat different circumstances, it has been held to be willful and wanton conduct for a police officer to allow a person whom the officer had reason to know was drunk to continue driving. See Ozik v. Gramins, 345 Ill.App.3d 502, 279 Ill.Dec. 68, 799 N.E.2d 871 (2003). Simply put, Dionesotes does not address the situation where, as here, an officer actually witnessed a traffic offense or where an officer suspected a driver was drunk because the driver was driving in a manner indicating impairment. The case is inapplicable here.
For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.
Affirmed.
GILLERAN JOHNSON, J., concurs.
Justice GROMETER, dissenting:
I believe that defendant's brief delay in proceeding through the green light at the intersection did not constitute a sufficient basis for the arresting officer to stop defendant's vehicle. Accordingly, I respectfully dissent.
First, I believe that the majority's conclusion that the investigatory stop in this case was warranted is based on a flawed interpretation of section 11-306(a)(1) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-306(a)(1) (West 2000)). Section 11-306 of the Code (625 ILCS 5/11-306 (West 2000)) is entitled "Traffic-control signal legend" and provides:
"Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. Vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited." 625 ILCS 5/11-306(a)(1) (West 2000).
I find nothing in the plain language of section 11-306(a)(1) regarding a time limit within which a motorist must enter an intersection after the traffic signal becomes green. The majority concedes as much, but reads into the statute a requirement that section 11-306(a)(1) permits a driver only "a reasonable period of time to react to the signal change and ascertain that it is safe to proceed." Op. 280 Ill.Dec. at 602, 802 N.E.2d at 853. However, when the language of a statute is plain and unambiguous, courts will not read in exceptions, limitations, or other conditions. People v. Braman, 327 Ill.App.3d 1091, 1094, 262 Ill.Dec. 363, 765 N.E.2d 500 (2002). Moreover, given the penal nature of the statute at issue, it is to be strictly construed in favor of an accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. People v. Lavallier, 187 Ill.2d 464, 468, 241 Ill.Dec. 529, 719 N.E.2d 658 (1999). The majority ignores these rules of construction. Simply put, *857 the plain language of the statute does not require a motorist to enter an intersection within a specified time frame after the traffic signal turns green.
The majority also suggests that section 11-306(a)(1) of the Code requires a motorist to proceed in some manner when a light changes from red to green. In support of this position, the majority cites to R.L. Polk & Co. v. Ryan, 296 Ill.App.3d 132, 140, 230 Ill.Dec. 749, 694 N.E.2d 1027 (1998), for the proposition that whenever the rights of the public are involved, statutory language importing permission or authority may be read as mandatory. Op. 280 Ill.Dec. at 603, 802 N.E.2d at 854. However, because we are dealing with a statute that is penal in nature, the statute should be narrowly construed. See Trinity Universal Insurance Co. v. O'Connor, 113 Ill.App.3d 560, 563, 69 Ill.Dec. 502, 447 N.E.2d 937 (1983). The majority states that my reading of section 11-306(a)(1) leads to an "absurd result." Op. 280 Ill. Dec. at 603, 802 N.E.2d at 854. According to the majority, under my interpretation of the statute "cars may stop indefinitely at an intersection." Op. 280 Ill.Dec. at 603, 802 N.E.2d at 854. The majority interprets section 11-306(a)(1) as if it were the only statute that would prevent a motorist from sitting for a prolonged period at a green light. My stance is simply that standing at a green light for a prolonged period of time does not violate section 11-306(a)(1).
I note that, generally, a stop for a minor traffic violation is considered a Terry stop (Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). People v. Isaac, 335 Ill.App.3d 129, 131, 269 Ill.Dec. 305, 780 N.E.2d 777 (2002). A Terry stop is permissible if, based on all the facts and circumstances, the officer has a reasonable and articulable suspicion that the suspect is committing, has committed, or is about to commit a crime. People v. Lockett, 311 Ill.App.3d 661, 667, 244 Ill.Dec. 232, 725 N.E.2d 27 (2000). In Isaac, we held that in order to justify a Terry stop based on a statutory violation, the officer must reasonably believe that the driver is violating a traffic law. Isaac, 335 Ill.App.3d at 131, 269 Ill.Dec. 305, 780 N.E.2d 777. In this case, it was not reasonable to believe that defendant's delay in proceeding through the intersection constituted a violation of section 11-306(a)(1) of the Code, which merely provides motorists with a legend or "definition" of each signal on a traffic-control device.
Finally, I note my disagreement with the majority's assertion that the stop of defendant's vehicle was justified based on section 11-1303 of the Code (625 ILCS 5/11-1303 (West 2000)). Op. 280 Ill.Dec. at 603-604, 802 N.E.2d at 854-855. It is true that an individual need not be charged with the offense for which the individual was stopped. People v. Sorrells, 209 Ill.App.3d 1064, 1069, 154 Ill.Dec. 497, 568 N.E.2d 497 (1991). Indeed, the State may argue that probable cause exists based on facts upon which the arresting officer did not rely or even believe existed at the time of the arrest, for it is well established that probable cause is measured against an objective standard. Florida v. Royer, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 242 (1983). However, the record does not support the conclusion that defendant violated section 11-1303.
Section 11-1303 provides, in pertinent part, as follows:
"Except where necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic-control device, no person shall:

*858 * * *
(2) Stand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge passengers:
* * *
d. Within 30 feet upon the approach of any flashing signal, stop sign, yield sign, or traffic control signal located at the side of a roadway[.]" 625 ILCS 5/11-1303 (West 2000).
The plain language of this statute states that stopping within 30 feet of a traffic-control signal is unlawful. While it is true that we defer to the trial court on factual findings (see People v. Ross, 317 Ill.App.3d 26, 29, 250 Ill.Dec. 589, 739 N.E.2d 50 (2000)), there is no evidence in the record as to how far defendant's vehicle was from the intersection when the arresting officer observed it standing still. The majority claims that "[i]t can be readily inferred from the testimony presented at the hearing on the motion to suppress that defendant was the first car at the traffic light." Op. 280 Ill.Dec. at 604, 802 N.E.2d at 855. Yet, the majority does not point to any evidence in the record from which such an inference may be drawn.
Moreover, I find unpersuasive the notion that the legislature intended section 11-1303 to apply to circumstances such as these. Admittedly, "stand," read literally, would encompass any time a vehicle is not moving. See 625 ILCS 5/1-194 (West 2000) (defining "stand" or "standing" as "the halting of a vehicle, whether occupied or not, otherwise than when temporarily and actually engaged in receiving or discharging passengers"). However, I do not believe that the legislature intended to make unlawful instances where a motorist hesitates for a relatively insignificant period of time for whatever reason, be it that he or she is changing the radio station or glancing at a map, before proceeding through a green light.
In short, while standing at a green light may, under certain circumstances, constitute a violation of the law, I do not believe that the evidence presented in this case demonstrated a violation of either section 11-306 or section 11-1303 of the Code. Therefore, I respectfully dissent.